## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NORTH AMERICAN PETROLEUM CORPORATION USA, *et al.*, | Case No. 10-11707 (CSS) |
| Debtors. | Jointly Administered |
| In re: | Chapter 11 |
| PETROFLOW ENERGY LTD., | Case No. 10-12608 (___) |
| Debtor. | Joint Administration Requested |

## JOINT MOTION OF THE FIRST FILED DEBTORS AND PETROFLOW ENERGY LTD. FOR ENTRY OF AN ORDER, PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE, DIRECTING THAT CERTAIN ORDERS IN THE FIRST FILED DEBTORS' CHAPTER 11 CASES BE MADE APPLICABLE TO PETROFLOW ENERGY LTD.

North American Petroleum Corporation USA ("NAPCUS") and Prize Petroleum LLC, as debtors and debtors in possession (collectively, the "First Filed Debtors"),[1] together with Petroflow Energy Ltd., the First Filed Debtors' corporate parent, as debtor and debtor in possession ("Petroflow,"[2] and together with the First Filed Debtors, the "Debtors"), submit this motion (the "Motion") requesting entry of an order directing that the First Filed Debtors' Orders

---

[1] The First Filed Debtors in these chapter 11 cases, along with the last four (4) digits of each First Filed Debtor's federal tax identification number, are: North American Petroleum Corporation USA (9766) and Prize Petroleum LLC (2460). The location of the First Filed Debtors' corporate headquarters and the Debtors' service address is: 1401 17th Street, Suite 310, Denver, Colorado 80202-1241, Attn: Tucker Franciscus.

[2] The last four (4) digits of Petroflow's Canadian corporation number are: Petroflow Energy Ltd. (517-5).

(as defined below) be made applicable to Petroflow.  In support of this Motion, the Debtors respectfully state as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 361, 362, and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules").

## Background[3]

### *General Description of Petroflow*

4.      Petroflow is the parent company of the First Filed Debtors organized under the laws of Alberta, Canada and directly owns all of the equity interests in North American Petroleum Corporation USA.  Petroflow's assets consist almost exclusively of its equity interests in North American Petroleum Corporation USA.[4]  As with the First Filed Debtors, Petroflow maintains its headquarters and business records in Denver, Colorado.  Other than providing a

---

[3]    A detailed description of NAPCUS's business, capital structure, and the events leading to the commencement of these chapter 11 cases is contained in the *Declaration of Tucker Franciscus, Chief Financial Officer of North American Petroleum Corporation USA in Support of First Day Motions,* filed on the First Filed Debtors' Petition Date [Docket No. 8].

[4]    Though Petroflow also maintains interests in three oil and gas Canadian wells, all of these wells have been "shut in" (*i.e.*, closed) since at least April 2009.  Petroflow does not believe it has any outstanding obligations or liabilities with respect to these wells.

guarantee of the First Filed Debtor's prepetition secured bank facility, as discussed below, Petroflow does not maintain any funded debt.

### *Description of the Debtors' Business and Reasons for Chapter 11 Filings*

5.     The Debtors operate an independent exploration and production company that predominantly engages in unconventional well drilling operations for natural gas extraction in certain locations in Oklahoma (specifically, the "Hunton Resource Play"). Over the past several years, virtually all of the Debtors' operations have taken place pursuant to a 2006 farmout agreement (the "Farmout Agreement") with Enterra Energy Corp. and certain of its affiliates (collectively, "Enterra"). Under the Farmout Agreement, the Debtors agreed to provide certain drilling services to Enterra, in return for a 70% interest in Enterra's working interest in the underground natural gas reserves. Generally, once the Debtors drill a well and necessary infrastructure improvements to the premises have been made, Enterra operates the wells and revenues are split between the Debtors and Enterra on a 70/30 ratio. The Debtors have "spud" over 60 wells in the Hunton Resource Play under the Farmout Agreement, many of which remain producing wells today (collectively, the "Wells").

6.     To support their drilling activities, the First Filed Debtors entered into that certain senior secured credit agreement originally dated August 25, 2005, with Texas Capital Bank, N.A., as administrative agent, and Guaranty Bank, FSB, as co-agent bank, Compass Bank has since succeeded Guaranty Bank as successor co-agent under the prepetition secured credit facility, on behalf of the lender parties thereto, to provide the Debtors with a $200 million term and revolving credit facility. Approximately $103 million remains outstanding under the prepetition secured credit facility. Petroflow guarantees the obligations of the First Filed Debtors under the prepetition secured credit facility.

3

7.    The Debtors required the construction of certain waste-water disposal and other infrastructure improvements to complement their drilling activities.   To that end, under a reimbursement agreement (the "Cost Recovery Agreement") between Enterra and the Debtors, Enterra agreed to provide up-front funding for the construction of such infrastructure improvements for the Wells.  Under the Cost Recovery Agreement, the Debtors were obligated (a) to reimburse Enterra for 110% of the costs of the up-front funding and (b) to pay a service fee for Enterra's use of such infrastructure as operator of Wells.  Although the Debtors were required pursuant to the Cost Recovery Agreement to ultimately fund more than the entire cost of the infrastructure improvements, all such improvements remained property of Enterra, and the Debtors had no interest in such improvements.  Enterra claims that approximately $15 million remains to be paid by the Debtors under the Cost Recovery Agreement.

8.    Alleging that the Debtors had not met certain timing deadlines regarding the drilling of certain of the Wells, Enterra purported to send notice of termination of the Farmout Agreement to the Debtors on December 14, 2009.  (The Debtors dispute Enterra's allegations and purported termination, as well as Enterra's subsequent attempts to submit the parties' dispute to arbitration.)  Moreover, in mid-February, 2010, Enterra filed certain state law mechanics and materialman's liens against the Debtors' interests in Enterra's working interests in the Wells arising from certain infrastructure and operational expenses allegedly assumed and/or paid by Enterra under the Cost Recovery Agreement.  Enterra also provided notice of these alleged liens to the Debtors' customers, largely consisting of major oil and gas distributors who purchase natural gas produced by the Wells.  Enterra likewise directed these customers to withhold revenues from the Debtors.  In response, the customers began holding back funds—totally approximately $2.4 million per month—owed to the Debtors until the parties' disputes were

4

resolved. The customers' holdbacks shut off all of the Debtors' revenue, liquidity, and ability to service their debt. The Debtors estimate that there currently is approximately $7 million of revenue in suspense.

9.        In light of Enterra's actions and after careful review, the Debtors determined that the most prudent alternative would be to seek to restructure their operations, potentially through a sale or other transaction in a chapter 11 proceeding. To that end, on May 11, 2010, the Debtors successfully negotiated a second forbearance agreement with their prepetition bank lenders Lenders (a prior forbearance having been executed on February 16, 2010), providing the Debtors with incremental funding to bridge their operations through to a sale or other restructuring transaction. However, on May 24, 2010, the prepetition bank lenders terminated the forbearance. Recognizing the challenges facing them, on May 25, 2010 (the "First Filed Debtors' Petition Date"), each of the First Filed Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code to provide them the opportunity to restructure their operations and debt and implement a restructuring transaction in an orderly and value-maximizing manner under the auspices of a chapter 11 proceeding.

10.       After the First Filed Debtors' Petition Date, Petroflow, in conjunction with the First Filed Debtors and their advisors, determined that to fully restructure the Debtors' debt and strength their obligations going forward operations, Petroflow should file for chapter 11. Accordingly, on the date hereof (the "Petroflow Petition Date"), Petroflow filed a voluntary petition with the Court under chapter 11 of the Bankruptcy. Petroflow and the First Filed Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On May 28, 2010, the Court

5

entered an order directing the joint administration and procedural consolidation of the First Filed Debtors' chapter 11 cases [Docket No. 25].

11.    Promptly after entry of the order approving this Motion, Petroflow will seek recognition of its chapter 11 case under Section 18.6 of the *Companies' Creditors Arrangement Act* in the Alberta Court of Queens Bench of Alberta, located in Calgary, Canada to ensure that the orders entered in these chapter 11 cases are recognized and given effect in all provinces and territories in Canada.

### Relief Requested

12.    By this Motion, the Debtors request entry of an order, substantially in the form attached hereto as Exhibit A, and pursuant to section 105(a) of the Bankruptcy Code, directing that all generally applicable orders previously entered, and any generally applicable proposed orders pending before the Court, in the First Filed Debtors' chapter 11 cases (collectively, the "First Filed Debtors' Orders"), apply to Petroflow in its chapter 11 case.  A list of the First Filed Debtors' Orders is annexed to Exhibit A as Exhibit 1.

13.    Specifically, the Debtors seek to have:  (a) those previously entered orders listed on Exhibit 1 applied to Petroflow effective *nunc pro tunc* to the Petroflow Petition Date; and (b) any orders entered after the Petroflow Petition Date on motions that were pending in the First Filed Debtors' chapter 11 cases on or before the Petroflow Petition Date applied to Petroflow effective as of the entry of any such orders.

14.    The Debtors seek this relief in an effort to eliminate the filing of duplicative applications and motions and, therefore, reduce the burdens on the Court and parties in interest. Assuming joint administration of Petroflow's and the First Filed Debtors' cases, each of the First Filed Debtors' Orders would apply to Petroflow as if Petroflow had commenced its chapter 11 case on the First Filed Debtors' Petition Date, with the limited exception that such orders be

6

effective as of the Petroflow Petition Date.  The relief set forth in the First Filed Debtors' Orders is necessary to facilitate a smooth transition into chapter 11 and to preserve the value of Petroflow's estates for the benefit of all parties in interest.

### Basis for Relief

15.     Section 105(a) of the Bankruptcy Code provides, in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" 11 U.S.C. § 105(a).  Pursuant to section 105(a) of the Bankruptcy Code, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of a debtor's assets.  See, e.g., In re Chinichian, 784 F.2d 1440, 1443 (9th Cir., 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); Bird v Crown Convenience (In re NWFX, Inc), 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy. . . is that equitable principles govern."); In re Cooper Props. Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W D Tenn. 1986) ("the Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

16.     Entry of an order directing that the First Filed Debtors' Orders be made applicable to Petroflow will obviate the need for duplicative notices, motions, applications, and orders to be filed in Petroflow's chapter 11 case.  The Debtors seek to save considerable time and expense for their estates and reduce the burden on the Court and parties in interest by proceeding in this manner.  Petroflow requires the protections and authorizations that are set forth in the First Filed Debtors' Orders to enter chapter 11 in an orderly manner and to restructure successfully. Absent the relief requested herein, Petroflow would have to seek substantially the same

7

substantive relief granted by the First Filed Debtors' Orders. Those orders address many of the matters that most debtors must deal with in their chapter 11 cases. For example, the orders deal with, among other things, cash management, the payment of taxes, insurance, and utilities, as well as employee related issues.

17.    Had Petroflow filed its chapter 11 petition at the same time as the First Filed Debtors, it would have been a movant with respect to the First Filed Debtors' Orders. By this Motion, the Debtors seek to streamline the process for requesting such relief, while at the same time providing the same requisite facts and justification for such relief as if Petroflow had filed such motions.

18.    The Debtors believe that the relief requested herein is appropriate to carry out the provisions of the Bankruptcy Code. Further, similar relief has been authorized in other complex chapter 11 cases under similar circumstances. See, e.g., In re WorldSpace, Inc., Case No. 08-12412 (PJW) (Bankr. D. Del. June 1, 2010) [Docket No. 1038]; In re SemCrude, L.P, Case No. 08-11525 (BLS) (Bankr. D. Del. Nov. 6, 2008) [Docket No. 2017]; In re Chi-Chi's, Inc., Case No. 03-13063 (CGC) (Bankr. D. Del. Oct. 24, 2003) [Docket No. 115]; In re Kaiser Aluminum Corp., Case No. 02-10429 (JKF) (Bankr. D. Del. Mar. 19, 2002) [Docket No. 239]; see also In re Chrysler LLC, Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. May 26, 2009) [Docket No. 2188]; In re Lehman Bros. Holdings Inc., Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Oct. 16, 2008) [Docket No, 1093]; In re WorldCom, Inc., Case No. 02-13533 (ALG) (Bankr. S.D.N.Y. 2002).

19.    Based on the foregoing, the Debtors submit that the relief requested is necessary and appropriate, is in the best interests of their estates and creditors, and should be granted in all respects.

8

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

20.     Under Bankruptcy Rule 6003, the Court may authorize relief because such relief is necessary to avoid immediate and irreparable harm.  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  See In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

21.     As described above, Petroflow's operations and obligations are integrated with those of the First Filed Debtors.  Failure to extend the relief granted previously to the First Filed Debtors to Petroflow would create distraction and additional expense at a time when the Debtors' financial and human resources are limited.  Accordingly, the Debtors submit they have satisfied the requirements of Bankruptcy Rule 6003 to support immediate payment of the Employee Obligations as provided herein.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

22.     To implement the foregoing successfully, to the extent applicable, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Notice

23.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known:  (a) the Office of the United States Trustee for the District of Delaware; (b) the co-agents under the prepetition secured credit facility; (c) Enterra; (d) the First Filed Debtors' thirty largest unsecured creditors; (e) all known unsecured creditors of Petroflow; (f) the Internal Revenue Service; (g) the Securities Exchange Commission; (h) the Delaware Secretary of State; (i) the Delaware Secretary of the Treasury;  and (i) all entities that have filed a

9

request for service of filings in the First Filed Debtors' chapter 11 cases pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered respecting this Motion as required by Local Bankruptcy Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

24.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

10

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and granting such other and further relief as the Court deems appropriate.

Dated:  August 20, 2010

/s/ Domenic E. Pacitti
**KLEHR HARRISON HARVEY BRANZBURG LLP**
Domenic E. Pacitti (DE Bar No. 3989)
919 Market Street, Suite 1000
Wilmington, Delaware 19801-3062
Telephone:      (302) 426-1189
Facsimile:      (302) 426-9193

- and -

Morton Branzburg (admitted *pro hac vice*)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:      (215) 569-2700
Facsimile:      (215) 568-6603

- and -

**KIRKLAND & ELLIS LLP**
David R. Seligman, P.C. (admitted *pro hac vice*)
Ryan Blaine Bennett (admitted *pro hac vice*)
Paul Wierbicki (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois  60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

Proposed Counsel to the Debtors and Debtors in Possession